422 F.2d 351
 73 L.R.R.M. (BNA) 2270
 EASTERN FREIGHT WAYS, INC., Appellee,
v.
LOCAL UNION NO. 707, HIGHWAY AND LOCAL MOTOR FREIGHT
DRIVERS, DOCKMEN AND HELPERS, Affiliated With the
International Brotherhood of Teamsters, Chauffeurs,
Warehousemen and Helpers of America, Appellant.
 No. 348, Docket 33932.
 United States Court of Appeals Second Circuit.
 Argued Dec. 16, 1969.
Decided Jan. 7, 1970, As Corrected Jan. 27, 1970.
 
 Bruce Simon, New York City (Cohen & Weiss, Robert S. Savelson and Frank M. Aiello, New York City, on the brief), for appellant.
 Alfred Donati, Jr., New York City (Zoloto, Zurkow & Donati, Jerome S. Zurkow, New York City, on the brief), for appellee.
 Before FRIENDLY, SMITH and ANDERSON, Circuit Judges.
 PER CURIAM:
 
 
 1
 This is an appeal from summary judgment entered in the United States District Court for the Southern District of New York, David N. Edelstein, Judge, 300 F.Supp. 1289 (S.D.N.Y.1969), permanently enjoining grievance proceedings brought by Local 707 of the Teamsters Union against Eastern Freight Ways, Inc. to enforce claims for contributions to pension and welfare funds under a labor-management agreement with New York and Worcester Express, Inc., another motor freight carrier, in reorganization under Chapter XI of the Bankruptcy Act. Worcester entered into a collective bargaining agreement with the union in 1964-65 which contained the usual broad grievance and arbitration clause for disputes arising under the agreement, and which contained a clause purporting to bind successors of any kind to Worcester to the terms of the agreement (Art. I, 5). By the end of 1966, Worcester was failing financially and had already failed to make payment to the union's pension and welfare funds as required under the collective bargaining agreement. On March 3, 1967, Eastern entered a written agreement with the two outstanding stockholders of Worcester to buy their capital stock subject to the approval by the ICC. In April, 1967 the ICC granted approval for Eastern temporarily to manage Worcester pending ICC determination on the acquisition of capital stock. On May 5, 1967, Worcester filed a Petition for Arrangement of liabilities under Chapter XI of the Bankruptcy Act, and the Southern District of New York allowed Worcester to continue as debtor in possession.
 
 
 2
 There was a meeting between the union and Eastern around this time and according to the union, Eastern promised to make good on Worcester's debts to the two funds and for vacation pay in return for the union's promise not to take action against Worcester which might prejudice Eastern's plan to close Worcester's Manhattan terminal. Meanwhile, the union pressed its claims against Worcester for the funds and vacation pay in the bankruptcy proceeding. The union also attempted to initiate grievance proceedings against Eastern, seeking the unpaid moneys due to the funds and due for vacation pay. Eastern petitioned the bankruptcy court to stay this attempt by the union but the referee ruled that he had no jurisdiction over the matter since the grievance proceedings would in no way affect the debtor Worcester or the estate. This ruling was affirmed on review by Judge MacMahon in the Southern District of New York. By order of the Referee in Bankruptcy on December 31, 1968 a plan of arrangement of the debtor, Worcester, and its creditors was confirmed, and pursuant thereto the union would receive 10% Of its money claims from Worcester for its funds and vacation pay. This 10% Is apparently being paid by Worcester or Eastern and is not a subject of the present suit. The union's attempted grievance proceedings are directed at requiring Eastern to pay the other 90% Of the funds allegedly owed by Eastern under the collective bargaining agreement.
 
 
 3
 Essentially for the reasons set out by Judge Edelstein in his opinion, we affirm the judgment enjoining the attempted grievance proceedings.